Jacob Burgard
1015 6th St
Oregon City OR 97045

| | |
|---|---|
| 1 | **UNITED STATES DISTRICT COURT** |
| 2 | DISTRICT OF OREGON |
| 3 | Portland Division |

| | | |
|---|---|---|
| 4 | JACOB BURGARD | Case No. 3:25-cv-1198-HZ |
| 5 | Plaintiff, | |
| 6 | v. | COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS, THE AMERICANSCIVIL RIGHTS, THE |
| 7 | CITY OF OREGON CITY, a municipal corporation; | AMERICANS WITH DISABILITIES ACT, AND THE REHABILITATION ACT |
| 8 | CLACKAMAS COUNTY, a political subdivision of the State of Oregon; | |
| 9 | JOHN BEHAN, in his individual capacity; | |
| 10 | DANIEL HANES, in his individual capacity; SYDNEY ODEN, in her individual capacity, | JURY TRIAL DEMANDED |
| 11 | DENYSE McGriff, in her individual capacity Defendants, | |
| 12 | | |
| 13 | | |

14 Plaintiff Jacob James Carl Burgard, a disabled resident of Oregon City, Oregon, brings this action pro

15 se under the Constitution, the Americans with Disabilities Act, and the Rehabilitation Act. As a

16 qualified individual with Autism Spectrum Disorder and CPTSD, Plaintiff has long advocated for safe,

17 ADA-compliant use of his neighborhood. Instead of receiving lawful protections, he was met with

18 retaliation, selective enforcement, and ultimately an unlawful arrest without warrant or cause in 2023.

COMPLAINT - 1

19  Defendants' actions—including discriminatory treatment, denial of accommodations, and abuse of

20  legal process—violated Plaintiff's civil rights. This suit seeks relief under 42 U.S.C. § 1983, the ADA,

21  and related federal law.

22                    **<ins>JURISDICTION AND VENUE</ins>**

23  **1.**     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which

24  confers original jurisdiction over all civil actions arising nnder the Constitution, laws, or treaties of

25  the United States, and 28 U.S.C. § 1343(a)(3), which provides jurisdiction for civil rights actions

26  authorized by 42 U.S.C. § 1983.

27  **2.**     This Court also has jurisdiction under 42 U.S.C. § 12133 (ADA) and 29 U.S.C. § 794a(a)(2)

28  (Rehabilitation Act), which provide for federal court jurisdiction over actions brought to enforce

29  rights under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

30  **3.**     This Court has supplemental jurisdiction over Plaintiff's related state law claims, if any,

31  pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy under

32  Article III of the United States Constitution.

33  **4.**     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of

34  the events or omissions giving rise to Plaintiff's claims occurred in Clackamas County, Oregon,

35  which is located within the Portland Division of the United States District Court for the District of

36  Oregon.

37  **5.**     All Defendants reside in, are headquartered in, or conduct substantial official business within

38  this judicial district, and all of the acts and omissions alleged herein took place within its

39  jurisdictional boundaries.

40                           **<ins>PARTIES</ins>**

COMPLAINT - 2

41 A. Plaintiff

42 **6.** **Jacob James Carl Burgard ("Plaintiff")** is an individual and resident of Oregon City, Oregon.

43 He is a qualified individual with disabilities as defined under the Americans with Disabilities Act

44 and Section 504 of the Rehabilitation Act. Plaintiff resides at 1015 6th Street, within the Mixed Use

45 Corridor 1 (MUC-1) zoning district, and has been actively engaged in lawful civic advocacy

46 concerning zoning, nuisance abatement, and ADA enforcement.

47 B. Municipal Defendants

48 **7.** **Defendant Clackamas County** is a governmental subdivision of the State of Oregon and, at all

49 relevant times, operated the Clackamas County Jail through its Sheriff's Office and correctional

50 staff. The County was responsible for detaining and processing Plaintiff following his arrest by

51 Oregon City Police. Plaintiff alleges that, while acting under color of state law, Clackamas County

52 officials and employees violated his constitutional and statutory rights during custodial intake and

53 pretrial detention.

54 **8.** **Defendant City of Oregon City** is a municipal corporation organized under the laws of the

55 State of Oregon. The City is responsible for adopting and enforcing zoning ordinances, maintaining

56 ADA compliance in public infrastructure, and ensuring nondiscriminatory access to government

57 programs and services. Plaintiff alleges that the City is liable under 42 U.S.C. § 1983, Title II of the

58 ADA, and Section 504 of the Rehabilitation Act for the acts and omissions of its officials, agents,

59 and employees

60 C. Individual Defendants

61 **9.** **Defendant John Behan** is a private citizen and was, at all relevant times, a sworn law

62 enforcement officer employed by the Oregon City Police Department and acting under color of state

63 law within the scope of his official duties. Plaintiff alleges that Officer Behan violated Plaintiff's

COMPLAINT - 3

64   Fourth and Fourteenth Amendment rights by initiating and effectuating an unlawful arrest on July

65   21, 2023, without a warrant or probable cause and in the absence of any exigent circumstances.

66   **10. Defendant Daniel Hanes** is a private citizen and was, at all relevant times, a sworn law

67   enforcement officer employed by the Oregon City Police Department and acting under color of state

68   law within the scope of his official duties. He is sued in his individual capacity for actions taken

69   under color of state law and within the scope of his official duties. Plaintiff alleges that Officer

70   Hanes was directly involved in arrest on July 21, 2023, and further participated in broader civil

71   conspiracy of retaliatory efforts in coordination with private individuals.

72   **11. Defendant Denyse McGriff** is a private citizen, and was at all relevant times, the duly elected

73   Mayor of Oregon City, Oregon. She is sued in her individual capacity for actions taken under color

74   of state law. Mayor McGriff filed a police report vilifying Plaintiff's advocacy as harassment and

75   contributing to a mental health classification in official records. December 20, 2023, Mayor McGriff

76   facilitated a group meeting with at least 27 disgruntled individuals for the purpose of securing a

77   malicious stalking order against Plaintiff and bolstering a community narrative portraying him as

78   unstable and dangerous.

79   **12. Defendant Sydney Oden** is a private citizen, and was at all relevant times, a sworn law

80   enforcement officer employed by the Oregon City Police Department. She is sued in her individual

81   capacity for actions taken under color of state law and within the scope of her official duties. Officer

82   Oden declined to view key evidence in Case #24-021388, undermining Plaintiff's efforts to secure

83   protective relief and deprived him of equal protection under the law and contributed to a hostile

84   environment in which emboldened further harassment.

85                                              **FACTS**

COMPLAINT - 4

86    A. Plaintiff's Disability and Civic Advocacy and The Onset of retaliation

87    **13.** Plaintiff is a resident of Oregon City, Oregon. He is a qualified individual with disabilities,

88    including Autism Spectrum Disorder, CPTSD, and related sensory and cognitive impairments. These

89    conditions substantially limit his ability to drive and tolerate overstimulating or high-conflict

90    environments.

91    **14.** Plaintiff resides within the Mixed Use Corridor 1 (MUC-1) zoning district—an area intended

92    for ADA-accessible, pedestrian-oriented residential and low impact commercial use.

93    **15.** Relying on the federally protected rights governing safe unobstructed access of public facilities

94    to access of his neighborhood, Plaintiff engaged in lawful civic advocacy to report zoning violations,

95    ADA noncompliance, and public nuisances affecting his ability to peacefully enjoy his home and

96    safe mobility of his neighborhood.

97    **16.** Beginning in early 2023, Plaintiff documented repeated zoning and safety violations by nearby

98    businesses, especially Mt. Tech Inc., a used auto business operating at 1002 7th Street.

99    **17.** Since 2009, Mt. Tech has been operating as a legal nonconforming use under OCMC Chapter

100   17.58. However, publicly available historic satellite imagery shows that it unlawfully intensified

101   nonconforming business and expanded its operations onto public sidewalks.

102   **18.** This expansion violated OCMC § 17.58.050, which prohibits increasing the degree of

103   nonconformity. Under OCMC § 17.58.060, Mt. Tech—not Plaintiff—bore the burden of proving the

104   continuity of its legal use.

105   **19.** Plaintiff submitted formal, well-documented complaints with supporting photo and video

106   evidence showing Mt. Tech obstructing ADA paths and using public space for business.

107   **20.** Around this same time, Plaintiff's enforcement efforts began to affect other neighboring

108   residents and employees of neighboring businesses, including Oregon City Family Dentistry

COMPLAINT - 5

109    ("OCFD"), a dental office located near Plaintiff and Mt. Tech, which ultimately lead to hostility

110    between Plaintiff and those affected by his lawful complaints.

111    **21.** The City of Oregon City, through its Planning, Zoning, Code Enforcement, and Police

112    Departments, failed to apply public safety, zoning and nuisance abatement policies, in an equitable

113    and nondiscriminatory manner, as required by the Equal Protection Clause of the Fourteenth

114    Amendment and Title II of the Americans with Disabilities Act.

115    **22.** Where discretionary enforcement authority was available, the City exercised such discretion in

116    a manner that was arbitrary, retaliatory, and unlawfully biased against Plaintiff.

117    **23.** The City's failure to curtail Mt. Tech's unlawful intensification of a nonconforming use—

118    despite Plaintiff's detailed and substantiated reports—constituted a selective and discriminatory

119    application of municipal policy.

120    **24.** The City's abdication of its enforcement obligations effectively nullified the procedural

121    safeguards embedded in Oregon City Municipal Code (OCMC) § 17.58.060 and emboldened Mt.

122    Tech to continue conduct that undermined zoning integrity, ADA access, and Plaintiff's safety and

123    property rights.

124    **25.** As enforcement lapsed, Plaintiff was forced to bear the burden of documenting constant,

125    continued violations himself, despite his disabilities that make it difficult for him to maneuver

126    stressful situations, and effectively communicate.

127    **26.** This exposed him to escalating retaliation, stigmatization, and emotional stress.

128    **27.** Plaintiff also made multiple good-faith requests for reasonable accommodations to the City,

129    including engaging with code enforcement in a neutral, non-police environment. These were ignored

130    or denied without discussion.

131    **28.** Lacking accommodation, Plaintiff was functionally excluded from city enforcement processes.

132    He was left to act in a role the City should have performed.

COMPLAINT - 6

133   **29.** As a result, Plaintiff became the target of harassment, stalking and retaliation, including false

134   police reports, public defamation, escalating hostility within the neighborhood, and the filing of

135   three protection orders against Plaintiff. These actions were connected to employees and associates

136   of Mt. Tech, OCFD, and residents associated with OCFD.

137   **B. Plaintiff's Arrest and Detention**

138   **30.** On July 20, 2023, while documenting neighborhood conditions from public property, Plaintiff

139   was reported to police by employees of Mt. Tech and OCFD. Officer John Behan responded and

140   confirmed in a report (CASE NO: 23-015100) that Plaintiff was documenting Mt. Tech's unlawful

141   practice of moving vehicles onto public streets. He noted that Plaintiff had not committed any crime.

142   He noted that Plaintiff remained on public sidewalks and alleyways.

143   **31.** Nevertheless, Officer Behan flagged the incident as "mental health involved" without any

144   clinical evaluation, diagnosis, or lawful basis.

145   **32.** The next day, on July 21, 2023, (CASE NO: 23-015198) Officers Behan and Daniel Hanes

146   returned to Plaintiff's home following a report of a laser being seen on the wall of OCFD's building.

147   **33.** Without seeking corroboration, alternative suspects, or conducting any meaningful

148   investigation, the officers arrested Plaintiff at his home—without a warrant probable cause or

149   exigent circumstances.

150   **34.** After being told charges were Disorderly Conduct II, Plaintiff was charged with 5 counts of

151   Disorderly Conduct in the First Degree and Menacing, based entirely on speculative, unverified

152   witness statements.

153   **35.** During intake at Clackamas County Jail, Plaintiff was subjected to being forcefully exposed in

154   front of staff and then endured a strip search and full body Xray, resulting in humiliation and

155   degradation. Plaintiff was denied access to a functioning phone for nearly 24 hours and was held

156    without judicial review until July 24, 2023 — in violation of the constitutional standards established

157    in County of Riverside v. McLaughlin. Additionally, Plaintiff was coerced into signing a medical

158    waiver under duress, after being threatened with continued confinement in a holding cell without

159    access to a phone, bed, or warmth.

160    **36.** On or about August 16, 2023, the Oregon City Prosecutor, Christine Landers, declined to

161    prosecute. Plaintiff was never arraigned or brought before a judge. The charges were dropped

162    without arraignment.

163    **37.** This experience caused Plaintiff severe emotional trauma, reputational damage, and loss of trust

164    in local institutions.

165    **C. Denial of ADA Accommodations and Disability-Based Exclusion**

166    **38.** On September 18, 2023, Plaintiff submitted a formal written request to Oregon City Code

167    Enforcement Officer Ryan Kersey, seeking an in-person meeting to address chronic zoning and

168    nuisance violations affecting his residence and neighborhood.

169    **39.** Due to Plaintiff's fragile mental state caused by the traumatic arrest experience and his

170    stress/sensory-processing impairments, he specifically requested that the meeting not take place at or

171    near the police station or in proximity to law enforcement vehicles or uniforms.

172    **40.** On September 19, 2023, Plaintiff again formally requested a reasonable accommodation in

173    writing to Oregon City Code Enforcement Officer Ryan Kersey, citing his inability to comply with

174    the City's standard procedures due to his mental health disability.

175    **41.** In a detailed email, Plaintiff wrote: "I also want yon to know that I have a protected disability,"

176    and "There has to be some kind of accommodation for persons with mental disabilities that hinders

177    their right to file grievances to the city!"

178    **42.** Plaintiff expressed that the volume and complexity of documenting violations was

179    overwhelming and impossible for him to manage without accommodation. Plaintiff also described

180    the emotional toll caused by the City's persistent inaction, stating: "I am too overwhelmed with all

181    this insanity. I cannot live in my home, and the city is well aware of all the insanity but shows zero

182    interest in obtaining the proof to act in a manner that meets my needs!"

183    **43.** Plaintiff further emphasized the direct harm he experienced as a result of this municipal neglect,

184    writing: "I was put in jail for 3 days because the city refused to act on a VERY well known city

185    problem."

186    **44.** These communications—citing Plaintiff's protected disability and requesting an accessible,

187    alternative method to participate in enforcement processes—were ignored or deflected by the City.

188    **45.** Despite these clear and repeated disclosures, Ryan Kersey continued to insist plaintiff email

189    detailed reports of each code violation concern.

190    **46.** At no time did Code Enforcement initiate a disability accommodation dialogue or propose

191    reasonable alternatives, despite knowing that Plaintiff was functionally unable to comply with

192    standard procedures.

193    **47.** And rather than engage in the required interactive process, the City offered no substantive

194    dialogue, no modifications, and no referral to an ADA coordinator. The City's ADA Coordinator

195    position was unstaffed at the time, in violation of 28 C.F.R. § 35.107, and no department official

196    assumed responsibility for evaluating Plaintiff's reasonable accommodation request.

197    **48.** After exhausting efforts with Code Enforcement, Plaintiff escalated his concerns to Mayor

198    Denyse McGriff, leaving a voicemail on September 19, 2023 and receiving a return call later that

199    morning. During the call—on speaker phone and witnessed by Plaintiff's neighbor Paxton Brewster

200    —Mayor McGriff spoke at length about her personal obligations and refused to allow Plaintiff to

201  properly explain his concerns. Frustrated by the lack of engagement, Plaintiff hung up and followed
202  up via email

203  **49.** On September 21, Mayor McGriff responded by denying that Plaintiff had clearly expressed
204  any concerns and offered no guidance regarding accommodations, ADA process, or alternative
205  procedures.

206  **50.** These failures deprived Plaintiff of equal access to public programs and services, specifically
207  his ability to participate in zoning enforcement, code compliance, public safety associated nuisance
208  abatement.

209  **51.** The City's failure to provide reasonable accommodations created a harmful and ongoing
210  enforcement void, compelling Plaintiff to remain persistently and visibly engaged in documenting
211  recurring municipal code violations that the City repeatedly refused to abate or remedy in a manner
212  that would eliminate the underlying problems.

213  **52.** This exposure subjected Plaintiff to escalating retaliation. The burden of this self-enforcement,
214  compounded by Plaintiff's diagnosed disorder, caused significant psychological harm, deepened his
215  housing instability, and further isolated him from public life and enjoyment of his property.

216  **D. Coordinated Efforts with Officials**

217  **53.** The City's refusal to address Plaintiff's concerns or accommodate his disability, emboldened a
218  coordinated campaign of harassment and public defamation carried out by private actors—including
219  Angela Gonzalez, Kirsten Sandoz, and Elizabeth Robarts-Dille—who maintained personal and
220  strategic alignments with Defendant Daniel Hanes and Mayor Denyse McGriff.

221  • Angela Gonzalez is an employee of Oregon City Family Dentistry and alleged associate of
222  Officer Daniel Hanes. On October 27, 2023, she filed an unsubstantiated stalking petition against
223  Plaintiff (Case No. 23SK04346), which was dismissed. On November 1, 2023, she staged a

COMPLAINT - 10

224     video encounter to portray Plaintiff as a harasser and provided the video to Kirsten Sandoz,
225     contributing to coordinated retaliation.

226     • Elizabeth Robarts-Dille is a neighbor and former friend of Plaintiff. She filed an elder abuse
227        petition (Case No. 23PO12360), which was dismissed on January 18, 2024; Plaintiff was
228        awarded attorney's fees. She is alleged to be a participant in Officer Hanes' November 1, 2023
229        report (Case No. 23-022681) and took part in defamatory online activity against Plaintiff.

230     • Kirsten Sandoz is a former Oregon City school counselor who resigned after Plaintiff's March
231        2024 complaint into her actions was upheld by the school district. On December 8, 2023, she
232        filed a stalking petition against Plaintiff (Case No. 23SK04822) alongside Robarts-Dille. She
233        admitted under oath to sharing a video of Plaintiff with Mayor McGriff sparking a 27 person
234        meeting to defame plaintiff. She participated in the online defamation.

235     **54.** On November 1, 2023, Officer Hanes knowingly incorporated false or misleading statements
236     into Case No. 23-022681 involving three unidentified women who reportedly spoke with Officer
237     Hanes in the lobby of the Oregon City Police Department. Officer Hanes' narrative was strategically
238     designed to assist in a coordinated campaign against Plaintiff. His report directly benefitted Angela
239     Gonzalez, and Elizabeth Robarts-Dille's efforts in retaliating against Plaintiff's lawful civic
240     advocacy. This action is currently under internal investigation by Oregon City Police Department's
241     Captain Edwins following a June 2025 complaint to Department of Public Safety Standards and
242     Training.

243     **55.** A key detail in the report stated, an employee of Oregon City Family Dentistry attempted and
244     failed at obtaining a stalking order against Plaintiff. The only known employee of OCFD to have
245     failed at a stalking attempt against Plaintiff is Angela Gonzalez. Plaintiff obtained CCTV footage

COMPLAINT - 11

246  that proves Angela Gonzalez was in the OCFD dental office during the entire duration and beyond
247  the reported times.

248  **56.** Evidence further indicates that the "two neighbors" referenced in Officer Hanes's report were
249  Elizabeth Robarts-Dille and Tina Kunz, both of whom—along with Angela Gonzalez—had directly
250  expressed hostility toward Plaintiff's zoning and ADA complaints. These individuals acted in
251  concert, sharing information and working to manufacture a basis for protective orders.

252  **57.** Later that same day of November 1, 2023, an anonymous post in the "Oregon City Chit Chat"
253  Facebook group falsely portrayed Plaintiff as a dangerous individual and included a non-consensual
254  photograph taken by a Snap-on Tools vendor, Shawn Griffith, affiliated with Mt. Tech.

255  **58.** The image was taken while Plaintiff lawfully documented Shawn Griffith's obstruction of a
256  public roadway with his tool truck.

257  **59.** The post generated 174 comments from many who have been subject to Plaintiff's complaints.
258  The comment thread featured inflammatory and defamatory remarks by Angela Gonzalez, Elizabeth
259  Robarts-Dille, and other individuals either directly affected by Plaintiff's civic complaints or
260  associated with Mt. Tech, OCFD or other affected parties.

261  **60.** Robarts-Dille on November 3, 2023, filed a malicious elder abuse petition in Clackamas County
262  Circuit Court, Case No. 23PO12360. The petition was voluntarily dismissed by Robarts-Dille on
263  January 18, 2024. Plaintiff was subsequently awarded attorney's fees by court order on May 9, 2024.
264  Evidence further establishes that Robarts-Dille and Gonzalez maintained documented ties to Kerstin
265  Sandoz, and that all three coordinated in a concerted effort to obtain retaliatory protective orders
266  against Plaintiff.

267  **61.** In December 2023, Oregon City Mayor Denyse McGriff actively convened and facilitated a
268  community meeting attended by at least 27 individuals, many of whom had been the subject of
269  Plaintiff's lawful complaints—including Kirsten Sandoz, Angela Gonzalez, and Elizabeth Robarts-

COMPLAINT - 12

270    Dille. By facilitating this gathering, Mayor McGriff provided a platform for retaliation, further

271    emboldening participants to escalate harassment campaigns under the perceived protection or

272    approval of City authority.

273    **62.** Mayor McGriff specifically helped organize the meeting to support Kerstin Sandoz—who was

274    seeking a stalking order against Plaintiff.

275    **63.** During the December meeting, police officers allegedly encouraged attendees to record and

276    monitor Plaintiff.

277    **64.** Following this event, harassment and coordinator efforts against plaintiff intensified. Plaintiff

278    has been stalked, targeted for public humiliation and mockery, and repeatedly labeled mentally.

279    **E. Stalking by Wert; Failure to Protect by Officer Oden**

280    **65.** On October 11, 2024 (Case No. 24-021388), Plaintiff and his wife reported ongoing nighttime

281    harassment at their home by an individual later identified as Daniel Raymond Wert. Wert's actions

282    repeatedly disturbed Plaintiff's household.

283    **66.** Plaintiff offered Officer Sydney Oden conclusive evidence, including the license plate number

284    and time-stamped video footage clearly identifying Wert and his passenger, Bailey Hanan, engaging

285    in provocative and harassing conduct. He also tried to explain the broader conspiracy efforts of

286    surrounding businesses.

287    **67.** Officer Oden refused to review the footage, declined to initiate an investigation, and dismissed

288    the complaint without taking any action.

289    **68.** In her official report, Officer Oden further falsely stated that Plaintiff and his wife misidentified

290    the couple in the car, because the car did not mach Plaintiff's description. She also stated in her

291    report Plaintiff and wife were 'yelling,' a characterization directly contradicted by video evidence

292    plaintiff took while making the report.

293    **69.** Officer Oden also omitted critical exculpatory and corroborative materials from the case record.

COMPLAINT - 13

294    **70.** Captured on video, during the time of report, Hanan is heard mocking Plaintiff's disability,

295    stating, "take your psychological medicine," and referencing "concern for elderly neighbors."

296    Plaintiff's obtained Facebook evidence connecting both Bailey Hanan and Daniel Wert to Elizabeth

297    Robarts-Dille and Tina Kunz, the elderly neighbors Hanan showed concern for in the police report.

298    **71.** On October 15, 2024 (Case No. 24-021664), Wert escalated the harassment by taunting Plaintiff

299    at his daughter's school bus stop. Wert called Plaintiff names like, "Fag Bag," and "Shit Stain," and

300    he affirmed to Plaintiff that his girlfriend didn't get in trouble for having expired tags on her vehicle.

301    Code Enforcement dropped the citation when she showed them she did have good tags.

302    **72.** On October 18, 2024 (Case No. 24SK04214), Plaintiff was awarded a temporary stalking

303    protective order against an individual using the alias "John Kline." That order could not be served

304    because the name was false.

305    **73.** On October 19, 2024, Plaintiff emailed Officer Jared Turpin for assistance in identifying "John

306    Kline." Officer Spencer Main later verified, using DMV records and video footage, that the true

307    identity was Daniel Raymond Wert—formally connecting him to the October 11 incident.

308    **74.** On January 16, 2025, Plaintiff requested a trial continuance due to Bailey Hanan had not yet

309    been served, having evaded service by lying about her address to Officer Oden.

310    **75.** On April 3, 2025, following evidentiary hearings, Judge Kathie Steele of the Clackamas County

311    Circuit Court issued a permanent stalking protective order against Daniel Raymond Wert, validating

312    Plaintiff's account and confirming a pattern of targeted, malicious harassment.

313    **76.** Officer Oden's refusal to investigate, view footage, or question witnesses allowed the

314    harassment to escalate unchecked and undermined Plaintiff's attempt to obtain timely legal

315    protection, causing additional trauma and legal disadvantage.

316    **77.** Officer Oden is currently under official investigation in relation to her handling of this incident.

317                                     **CLAIM FOR RELIEF**

COMPLAINT - 14

318     A. For Defendant CLACKAMAS COUNTY


320                          **FIRST CLAIM FOR RELIEF**
321                  **Violation of the Fourth and Fourteenth Amendments**
322                          **Unlawful Pretrial Detention**

324     **78.** Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set

325     forth herein.

326     **79.** Clackamas County, acting under color of law through its agents and employees at the

327     Clackamas County Jail, unlawfully detained Plaintiff for a period exceeding 48 hours without

328     providing a judicial determination of probable cause, in violation of clearly established

329     constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

330     **80.** Plaintiff was arrested without a warrant on July 21, 2023, and was held in the Clackamas

331     County Jail until July 24, 2023. At no point during this 72-hour period or period was Plaintiff

332     brought before a judge for a probable cause hearing.

333     **81.** This delay violated the constitutional standard articulated in County of Riverside v.

334     McLaughlin, 500 U.S. 44 (1991), which requires that arrestees be provided a judicial review of

335     probable cause within 48 hours of warrantless arrest.

336     **82.** As a direct and proximate result of this unlawful detention, Plaintiff suffered deprivation of

337     liberty, emotional distress, humiliation, and psychological trauma.

338                          **SECOND CLAIM FOR RELIEF**
339                  **Violation of the Fourth Amendment**
340                  **Unlawful Search (42 U.S.C. § 1983)**

342     **83.** Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set

343     forth herein.


COMPLAINT - 15

344     **84.** During intake at Clackamas County Jail, Plaintiff was subjected to a degrading and invasive

345     search exposing him in the presence of staff.

346     **85.** The strip search was conducted in a manner that was objectively unreasonable, excessive, and

347     humiliating, particularly given the absence of any legitimate penological justification.

348     **86.** The County's policies and practices in this regard violated Plaintiff's clearly established Fourth

349     Amendment rights.

350     **87.** The strip search caused Plaintiff unnecessary humiliation, emotional trauma, and exacerbated

351     his mental health symptoms.

352                  **THIRD CLAIM FOR RELIEF**
353             **Violation of the Fourteenth Amendment**
354     **Coerced Medical Waiver and Due Process Violations (42 U.S.C. § 1983)**

356     **88.** Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set

357     forth herein.

358     **89.** While detained at Clackamas County Jail, Plaintiff was subjected to coercion in violation of his

359     Fourteenth Amendment due process rights.

360     **90.** Specifically, jail officials compelled Plaintiff to sign a medical waiver under duress, threatening

361     continued confinement in a holding cell without access to a phone, bed, blanket or warmth, in lieu of

362     being placed in general population housing, unless he complied.

363     **91.** The waiver was not executed voluntarily but was the result of pressure exerted under harsh and

364     punitive conditions, rendering the consent invalid under constitutional standards.

365     **92.** This coerced act constituted a deprivation of Plaintiff's liberty interest and bodily autonomy

366     without due process of law.

367    **93.** As a direct and proximate result of Clackamas County's unconstitutional actions, Plaintiff

368    suffered emotional harm, increased psychological distress, and violation of his fundamental rights.

370    B. For Defendant CITY OF OREGON CITY

372    **FIRST CLAIM FOR RELIEF**
373    **Violation of Title II of the Americans with Disabilities Act – Failure to Provide Reasonable**
374    **Accommodations (42 U.S.C. § 12132)**

376    **94.** Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set

377    forth herein.

378    **95.** Plaintiff is a qualified individual with disabilities, including Autism Spectrum Disorder and

379    CPTSD, which substantially limit major life activities such as communication, stress regulation, and

380    navigating high-conflict or overstimulating environments.

381    **96.** Plaintiff made multiple formal, written requests for reasonable accommodations from Oregon

382    City, including the ability to meaningfully engage in the zoning enforcement process without

383    exposure to law enforcement presence or police-affiliated locations, and alternative reporting

384    methods suited to his cognitive impairments.

385    **97.** Despite receiving these detailed and repeated requests, Oregon City failed to respond

386    meaningfully, offer alternatives, or engage in the required interactive process.

387    **98.** As a direct result, Plaintiff suffered significant emotional distress, exclusion from civic

388    processes, housing instability, and increased exposure to community hostility.

389    **SECOND CLAIM FOR RELIEF**
390    **Violation of Section 504 of the Rehabilitation Act**
391    **(29 U.S.C. § 794)**

392    **99.** Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set

393    forth herein.

COMPLAINT - 17

394   **100.** Oregon City receives federal financial assistance and is therefore subject to the requirements of

395   Section 504 of the Rehabilitation Act.

396   **101.** Plaintiff, as a qualified individual with a disability, was excluded from participation in and

397   denied the benefits of zoning enforcement and public safety-related services due to Oregon City's

398   failure to accommodate his known limitations.

399   **102.** The City's actions and inactions—including ignoring Plaintiff's disclosures of disability, failing

400   to modify procedures, and refusing to provide alternative methods for communication—constituted

401   intentional discrimination under Section 504.

402   **103.** Oregon City's conduct foreseeably and proximately caused Plaintiff substantial harm, including

403   psychological trauma, public stigmatization, and civic disenfranchisement.

404   **THIRD CLAIM FOR RELIEF**
405   **Violation of the First Amendment**
406   **Retaliation (42 U.S.C. § 1983)**

408   **104.** Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set

409   forth herein.

410   **105.** Plaintiff engaged in protected First Amendment activity by documenting and reporting zoning

411   violations, ADA noncompliance, and public nuisances affecting his neighborhood.

412   **106.** Rather than support Plaintiff's lawful advocacy, Oregon City selectively ignored his reports,

413   failed to act on substantiated evidence, and allowed retaliation by third parties to flourish.

414   **107.** City officials, including Mayor Denyse McGriff and law enforcement officers, enabled and, at

415   times, coordinated with private actors—such as Angela Gonzalez, Elizabeth Robarts-Dille, and

416   others—who targeted Plaintiff for his advocacy.

417   **108.** This pattern of deflection, inaction, and facilitation of public retaliation constitutes adverse

418   action against protected speech and was motivated, at least in part, by Plaintiff's exercise of his First

419   Amendment rights.

COMPLAINT - 18

420 **109.** As a result, Plaintiff suffered severe emotional and reputational harm and was deterred from

421 further engaging in advocacy and civic participation.

422
423
424

**FOURTH CLAIM FOR RELIEF**
**Violation of the Equal Protection Clause**
**Selective Enforcement (42 U.S.C. § 1983; U.S. Const. amend. XIV)**

426 **110.** Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set

427 forth herein.

428 **111.** Oregon City, acting under color of law, selectively and arbitrarily enforced zoning and nuisance

429 abatement laws in a manner that disfavored Plaintiff while shielding others similarly situated.

430 **112.** Despite receiving extensive documentation of Mt. Tech's illegal expansion and ADA violations,

431 Oregon City failed to apply the same enforcement standards it applied to others, thereby denying

432 Plaintiff equal protection under the law.

433 **113.** The City's refusal to act served no rational government interest and was motivated, in part, by

434 bias against Plaintiff's disability status and civic engagement.

435 **114.** This discriminatory treatment contributed directly to Plaintiff's victimization, housing

436 instability, and loss of trust in local government.

437
438
439

**FIFTH CLAIM FOR RELIEF**
**Violation of Title II of the ADA**
**Failure to Maintain an ADA Coordinator (28 C.F.R. § 35.107)**

440 **115.** Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set

441 forth herein.

442 **116.** At all times relevant, Oregon City failed to designate and maintain an ADA Coordinator as

443 required under 28 C.F.R. § 35.107, depriving disabled residents—including Plaintiff—of a central

444 contact for reasonable accommodations, grievance processing, and ADA compliance oversight.

COMPLAINT - 19

445　　117. This systemic failure denied Plaintiff the opportunity to have his requests properly evaluated

446　　and routed, contributed to the breakdown of the accommodation process, and compounded the City's

447　　broader exclusionary practices.

448　　118. As a direct and foreseeable result, Plaintiff was left functionally excluded from essential public

449　　processes, subject to worsening retaliation, and deprived of equal protection and due process rights

450　　guaranteed under federal law.

451　　C. For Defendant JOHN BEHAN

452
453
454
**FIRST CLAIM FOR RELIEF**
**Violation of the Fourth Amendment**
**Unlawful Arrest Without Probable Cause (42 U.S.C. § 1983)**

455　　119. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set

456　　forth herein.

457　　120. On July 21, 2023, Defendant Officer John Behan, acting under color of state law and in concert

458　　with Officer Daniel Hanes, arrested Plaintiff at his home without a warrant, without probable cause,

459　　and without exigent circumstances.

460　　121. The arrest followed a vague and unsubstantiated report of a laser light allegedly seen on the

461　　wall of a neighboring business. Officer Behan failed to conduct any meaningful investigation, seek

462　　corroboration, or consider alternative suspects before effectuating the arrest.

463　　122. The arrest was based entirely on speculative and unverified witness statements, lacking the

464　　objective facts required to establish probable cause.

465　　123. Plaintiff had not committed a crime, was not posing an immediate threat, and was within his

466　　home at the time of arrest. The arrest thus constituted an unreasonable seizure under the Fourth

467　　Amendment of the United States Constitution.

COMPLAINT - 20

468    **124.** As a direct and proximate result of Officer Behan's actions, Plaintiff was unlawfully detained,

469    criminally charged, and subjected to traumatic incarceration, resulting in emotional distress,

470    reputational harm, and long-term psychological injury.

471    **SECOND CLAIM FOR RELIEF**
472    **Violation of the Fourteenth Amendment**
473    **Disability-Based Classification (42 U.S.C. § 1983)**

474    **125.** Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set

475    forth herein.

476    **126.** On July 20, 2023, while Plaintiff was lawfully documenting public conditions from sidewalks

477    and alleys, Officer Behan responded to a calls placed by employees of Mt. Tech and Oregon City

478    Family Dentistry.

479    **127.** After confirming that Plaintiff had committed no crime and had remained on public property,

480    Officer Behan nevertheless flagged the incident as "mental health involved" in official records,

481    without any clinical evaluation, behavioral basis, or justification.

482    **128.** This classification was arbitrary, stigmatizing, and based on disability-related assumptions or

483    biases, violating Plaintiff's rights under the Fourteenth Amendment to be free from arbitrary

484    government classification and discrimination.

485    **129.** The "mental health involved" designation contributed to later harmful actions by law

486    enforcement and city officials, including Plaintiff's unlawful arrest, further stigmatization, and

487    exclusion from city processes.

488    **130.** As a direct and proximate result of Officer Behan's conduct, Plaintiff suffered constitutional

489    harm, emotional distress, and a chilling of his civic participation.

490    D. For Defendant DANIEL HANES

491    **FIRST CLAIM FOR RELIEF**
492    **Violation of the Fourth Amendment**
493    **Unlawful Arrest (42 U.S.C. § 1983)**

494    **131.** Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set

495    forth herein.

496    **132.** On July 21, 2023, Officer Daniel Hanes, acting under color of law and in concert with Officer

497    John Behan, arrested Plaintiff at his home without a warrant, probable cause, or exigent

498    circumstances.

499    **133.** The arrest was initiated based on an unverified and vague report concerning a laser light seen on

500    a building wall. Officer Hanes failed to perform a proper investigation, seek alternative explanations,

501    or confirm any evidence implicating Plaintiff.

502    **134.** At the time of arrest, Plaintiff had not committed any crime, posed no immediate threat, and

503    was inside his residence.

504    **135.** The arrest was unreasonable and violated Plaintiff's rights under the Fourth Amendment to be

505    free from unlawful seizures.

506    **136.** As a direct result of this unconstitutional conduct, Plaintiff was detained, criminally charged,

507    and subjected to physical and psychological trauma, including confinement in Clackamas County

508    Jail and prolonged emotional harm.

509    **SECOND CLAIM FOR RELIEF**
510    **Violation of the First Amendment**
511    **Retaliatory Conspiracy (42 U.S.C. § 1983)**

512    **137.** Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set

513    forth herein.

514    **138.** Plaintiff engaged in protected First Amendment activity through his civic advocacy—

515    documenting zoning violations, ADA noncompliance, and public nuisances.

516    **139.** In retaliation for this protected speech, Officer Hanes collaborated with individuals hostile to

517    Plaintiff's advocacy efforts to create a record of false complaints and misleading reports designed to

518    discredit and criminalize Plaintiff.

COMPLAINT - 22

519   **140.** On November 1, 2023, Officer Hanes filed a police report (Case No. 23-022681) that

520   knowingly included false or misleading statements from individuals with a demonstrated retaliatory

521   motive—including Angela Gonzalez and Elizabeth Robarts-Dille—and omitted exculpatory

522   evidence, such as time-stamped CCTV footage contradicting their claims.

523   **141.** This report facilitated further retaliatory legal actions, including meritless protective order

524   petitions intended to chill Plaintiff's advocacy and publicly stigmatize him.

525   **142.** The adverse actions taken against Plaintiff were motivated by his constitutionally protected

526   expression and advocacy, and lacked any legitimate law enforcement basis.

527   **143.** As a result of Officer Hanes' retaliatory conduct, Plaintiff suffered emotional harm, reputational

528   damage, and a chilling effect on his civic engagement.

529
530             **THIRD CLAIM FOR RELIEF**
531    **Civil Conspiracy to Violate Constitutional Rights**
                     **(42 U.S.C. § 1983)**

532   **144.** Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set

533   forth herein.

534   **145.** Defendant Hanes entered into an agreement or tacit understanding with non-state actors—

535   including Angela Gonzalez, Elizabeth Robarts-Dille—to retaliate against Plaintiff for his lawful

536   zoning and ADA advocacy.

537   **146.** The conspirators acted with a shared objective of depriving Plaintiff of his constitutional rights,

538   including his First and Fourth Amendment protections.

539   **147.** Officer Hanes' November 1, 2023 report intentionally aided in advancing the conspiracy by

540   giving a law enforcement imprimatur to fabricated or misleading allegations from private

541   individuals closely aligned with his co-defendants and city leadership.

542   **148.** These actions were taken under color of state law and in coordination with private individuals,

543   amounting to a joint engagement in unlawful conduct that directly harmed Plaintiff.

COMPLAINT - 23

544   **149.** As a result, Plaintiff was subjected to retaliatory legal action, harassment, and ongoing public

545   defamation, causing substantial psychological and emotional harm.

546   <u>E For Defendant DENYSE MCGRIFF</u>

547
548
549
**FIRST CLAIM FOR RELIEF**
**Violation of the First Amendment**
**Retaliation for Protected Advocacy (42 U.S.C. § 1983)**

550   **150.** Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set

551   forth herein.

552   **151.** Plaintiff engaged in protected First Amendment activity by submitting lawful complaints

553   regarding zoning violations, ADA noncompliance, and public nuisances in his neighborhood.

554   **152.** Rather than support or neutrally process these concerns, Defendant Mayor Denyse McGriff

555   retaliated against Plaintiff for his civic advocacy.

556   **153.** On or around September 19, 2023, Plaintiff contacted Mayor McGriff requesting assistance

557   with ADA-related accommodations and enforcement neglect. During the phone call, witnessed by a

558   third party, Mayor McGriff dismissed Plaintiff's concerns and refused to engage in meaningful

559   dialogue.

560   **154.** On September 21, 2023, Mayor McGriff falsely claimed Plaintiff had not clearly communicated

561   any disability concerns and failed to provide any information about ADA processes or available

562   accommodations.

563   **155.** Mayor McGriff's dismissive posture reinforced the City's broader refusal to engage with

564   Plaintiff's complaints, contributing to Plaintiff's exclusion from zoning and enforcement processes.

565   **156.** Additionally, Mayor McGriff publicly undermined Plaintiff's credibility by portraying him as

566   mentally unstable and by later convening community meetings that served as a platform for

567   organized retaliation against him.

COMPLAINT - 24

568   **157.** These actions were intended to chill Plaintiff's protected expression, discourage further

569   advocacy, and isolate him from public support.

570   **158.** As a direct and proximate result of Defendant McGriff's retaliatory conduct, Plaintiff suffered

571   reputational harm, emotional distress, and suppression of his constitutional right to petition the

572   government.

573   **THIRD CLAIM FOR RELIEF**
574   **Civil Conspiracy**
575   **Coordinated Retaliation Against Civic Engagement**
576   **(42 U.S.C. § 1983)**

578   **159.** Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set

579   forth herein.

580   **160.** In December 2023, Mayor McGriff actively convened and facilitated a community meeting

581   attended by at least 27 individuals, many of whom had been directly affected by Plaintiff's civic

582   complaints.

583   **161.** This meeting included individuals known to have filed or pursued retaliatory legal actions

584   against Plaintiff—such as Angela Gonzalez, Kirsten Sandoz, and Elizabeth Robarts-Dille.

585   **162.** The meeting was convened specifically to support Kerstin Sandoz's stalking petition against

586   Plaintiff and, more broadly, to rally community members around a coordinated campaign of

587   surveillance, public shaming, and harassment.

588   **163.** During the meeting, police officers allegedly encouraged participants to monitor and record

589   Plaintiff, further escalating the environment of intimidation and reprisal.

590   **164.** By organizing this meeting and providing an official platform for retaliation, Mayor McGriff

591   acted in concert with private individuals to deprive Plaintiff of his constitutional rights under color

592   of state law.

593     **165.** These coordinated acts constituted a civil conspiracy to retaliate against and silence Plaintiff's

594     protected advocacy, violating his First and Fourteenth Amendment rights.

595     **166.** As a result of this conspiracy, Plaintiff was subjected to community surveillance, stigmatization,

596     and emotional trauma, causing long-lasting harm to his mental health and civic engagement.

597     F For Defendant SYDNEY ODEN

598                    **FIRST CLAIM FOR RELIEF**
599                 **Violation of the Fourteenth Amendment**
600                   **Denial of Equal Protection**
601                     **(42 U.S.C. § 1983)**

602     **167.** 163. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully

603     set forth herein.

604     **168.** Defendant Officer Sydney Oden, acting under color of state law, violated Plaintiff's right to

605     equal protection under the Fourteenth Amendment by refusing to meaningfully investigate or

606     respond to Plaintiff's reports of targeted harassment and stalking by known individuals with a

607     history of coordinated retaliation against him.

608     **169.** On October 11, 2024, Plaintiff provided Officer Oden with clear, time-stamped video evidence

609     and the license plate number of a black truck operated by Daniel Raymond Wert—evidence

610     documenting repeated harassment outside Plaintiff's home. Officer Oden declined to view the

611     footage, dismissed the report, and failed to initiate any investigation or follow-up action (Case No.

612     24-021388).

613     **170.** At the time, Wert and his associate Bailey Hanan were already linked to individuals who had

614     filed false or retaliatory complaints against Plaintiff. The provided evidence showed intentional

615     provocation and verbal abuse, including statements mocking Plaintiff's mental health disability.

616     **171.** Officer Oden's refusal to review exculpatory video evidence or pursue basic investigatory steps

617     —despite Plaintiff's well-documented history of disability and prior victimization—deviated from

618     standard investigative practice and failed to provide Plaintiff with the same protections afforded to

619     other similarly situated individuals.

620     **172.** As a result of this selective inaction, Plaintiff was denied timely legal relief and subjected to

621     escalating harassment, including a second incident on October 15, 2024, at his daughter's school bus

622     stop, which further endangered his sense of safety and familial stability.

623     **173.** Officer Oden's conduct was not justified by any legitimate law enforcement interest and instead

624     reflected discriminatory bias and arbitrary decision-making, particularly in the context of Plaintiff's

625     known disabilities and civic advocacy background.

626     **174.** This unequal treatment undermined Plaintiff's access to public safety services and contributed

627     to his prolonged victimization, emotional trauma, and deteriorating trust in law enforcement

628     institutions.

629     RESERVATION OF RIGHTS TO AMEND

630     **175.** Plaintiff expressly reserves the right to amend this Complaint as discovery proceeds and as

631     further facts, evidence, or legal theories become available, including but not limited to the outcomes

632     of pending or ongoing investigations related to Defendants' conduct and 3rd party aggressors. This

633     reservation includes the right to add claims, parties, and factual allegations as justice requires under

634     Rule 15 of the Federal Rules of Civil Procedure.

635     # PRAYER FOR RELIEF

636     **176.** WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and

637     against Defendants, and award the following relief:

638     **177. Declaratory Relief**

639  **a)** declaration that the acts, omissions, policies, and practices of Defendants violated Plaintiff's

640  rights under the United States Constitution, the Americans with Disabilities Act, and the

641  Rehabilitation Act.

642  **178. Injunctive Relief**

643  **a)** A permanent injunction requiring the City of Oregon City to:

644  • Comply with Title II of the Americans with Disabilities Act and Section 504 of the

645  Rehabilitation Act;

646  • Designate and publicly identify a qualified ADA Coordinator pursuant to 28 C.F.R. § 35.107;

647  • Engage in interactive processes when disability accommodation requests are made;

648  • Refrain from retaliating against individuals who engage in protected civic advocacy;

649  • Enforce zoning and nuisance abatement ordinances in a nondiscriminatory and lawful manner.

650  **179. Compensatory Damages**

651  **a)** For physical pain, emotional distress, psychological trauma, reputational harm, loss of liberty,

652  and loss of enjoyment of life caused by Defendants' actions, in an amount to be determined at

653  trial.

654  **180. Punitive Damages**

655  **a)** Against individual Defendants John Behan, Daniel Hanes, Sydney Oden, and Denyse McGriff,

656  in their individual capacities, for conduct that was malicious, oppressive, or in reckless

657  disregard of Plaintiff's federally protected rights.

658  **181. Attorney's Fees and Costs**

659    **a)** An award of reasonable attorney's fees and litigation expenses under 42 U.S.C. § 1988, and

660        other applicable statutes including the ADA and Section 504.

661    **182.** Prejudgment and Post-Judgment Interest

662    **a)** On all monetary awards as allowed by law.

663    **183. Such other and further relief**

664    **a)** As the Court deems just, equitable, and proper under the circumstances.

665                                 **DEMAND FOR JURY TRIAL**

666

667    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by

668    jury on all issues so triable.

669    Respectfully submitted,
670
671    Dated: July 10 2025
672    Oregon City, Oregon

674    Jacob James Carl Burgard
675    Plaintiff, Pro Se
676    1015 6th Street
677    Oregon City, OR 97045
678    Email: Kelliemor13@gmail.com
679    Phone: 503-703-5957